legally cognizable claim for breach of contract here also does not lie in the absence of a claim for damages.

Anthem's motions to strike are, therefore, granted as to both counts.

## IN RE PROPERTY OF PERRY FORGIONE ET AL.

Superior Court, Judicial District of New Haven at Meriden
File No. CR-05-1845500

Memorandum filed January 6, 2006

*Lynch, Traub, Keefe & Errante*, for the petitioners.

*Seth R. Garbarsky*, assistant state's attorney, for the respondent state of Connecticut.

RUBINOW, J. This memorandum of decision addresses the "Motion for Return of Unlawfully Seized Property and Its Suppression as Evidence" filed by the petitioners, Perry Forgione, Denise Forgione and Meghan Forgione (Forgiones), under date of July 29, 2005. The Forgiones jointly assert that two search and seizure warrants, issued by separate and independent magistrates, effectively violated the protections guaranteed by the fourth and fourteenth amendments to the United States constitution and article first, §§ 7 and 8, of the constitution of Connecticut. They further assert that the searches and seizures enabled by these warrants improperly enabled law enforcement officers to obtain and to hold computers and related materials from the Forgione home, and improperly enabled the officers to ascertain the Internet protocol (IP) address used by the Forgione family members. Specifically, the Forgiones request that the court order the "return of property seized and to suppress for use as evidence such seized property on the grounds that: 1. The warrants are insufficient on their face; and 2. There was not probable cause for believing the existence of the grounds on which the warrants were issued." The Forgiones also specifically claim that the search and seizure warrants at issue "failed to include sufficient facts to establish probable cause that a crime had been committed or that the property seized in the search warrants is connected to a crime."[1]

---

[1] At the evidentiary hearing held at the Forgiones' request, they withdrew any claims that the searches and seizures "were based upon warrants supported by affidavits which contained information obtained illegally." This is an ostensible reference to information related to Meghan Forgione's telephone number contained in school records.

It is uncontroverted that the property at issue was identified and seized during the preliminary course of a criminal investigation involving Internet communications with or concerning Meghan Forgione. At the time the motions were filed, at the time of the evidentiary hearing held to address the Forgiones' motion, and, at the present, no criminal charges have been brought against Meghan Forgione or any member of her family relating to any of the incidents at issue in the present case. Both the Forgiones and the interests of the state have been vigorously represented by counsel throughout the course of the evidentiary and briefing aspects of this factually compelling matter.

Upon consideration of the facts as established at the evidentiary hearing, along with the applicable legal principles, the court finds that each of the search warrants at issue presented sufficient basis for the magistrates' determinations of probable cause that a crime had been committed, when viewed in the totality of the circumstances at issue. As the Forgiones, the movants, have failed here to meet their burden of proving that either search warrant violates either the state or federal constitution or that an adequate basis exists for the suppression of any evidence that has been presented to the court, their motion for return and suppression must be denied.

I

FACTUAL AND PROCEDURAL HISTORY

In reaching its decision in this matter, the court has found the facts as supported by the evidence presented at the hearing held on August 4, 2005. Full documentary exhibits included transcripts of access to computer accounts. The court has utilized the applicable legal standards in considering this evidence and the testimony of trial witnesses,[2] who included Charles Griffen,

---

[2] "The trial court . . . is not bound by the uncontradicted testimony of any witness; *Bieluch* v. *Bieluch*, 199 Conn. 550, 555, 509 A.2d 8 (1986); see

an information officer from Quinnipiac University (Quinnipiac); Sean Dolan, a Hamden police officer; and Andrew Hayden, a student at Quinnipiac.

In determining that the Forgiones have failed to meet their burden of proving by a preponderance of the evidence that either search warrant violates either the state or federal constitution and that an inadequate basis for suppression now exists, the court found the following facts on the basis of the evidence adduced at the hearing.[3]

*Acheson* v. *White*, 195 Conn. 211, 217, 487 A.2d 197 (1985); and is in fact free to reject such testimony. See *State* v. *Dudla*, 190 Conn. 1, 7, 458 A.2d 682 (1983). The trier is the judge of the credibility of all the witnesses and the weight to be given their testimony and, therefore, has the right to accept part or disregard part of a witness' testimony. *Griffin* v. *Nationwide Moving & Storage Co.*, 187 Conn. 405, 422, 446 A.2d 799 (1982)." *In re Hector L.*, 53 Conn. App. 359, 366, 730 A.2d 106 (1999). "The probative force of conflicting evidence is for the trier to determine . . . . *In re Ashley E.*, 62 Conn. App. 307, 316, 771 A.2d 160, cert. denied, 256 Conn. 910, 772 A.2d 601 (2001)." *In re Jonathon G.*, 63 Conn. App. 516, 528–29, 777 A.2d 695 (2001). It is the court's province to determine which expert testimony, if any, is more credible than other expert opinion evidence provided for review. *Keans* v. *Bocciarelli*, 35 Conn. App. 239, 241–42, 645 A.2d 1029, cert. denied, 231 Conn. 934, 650 A.2d 172 (1994). Moreover, "[c]ourts must necessarily rely on circumstantial evidence in many cases and may draw reasonable and logical inferences from [the] facts existing prior to or subsequent to an event for the purpose of reaching a conclusion of fact." (Internal quotation marks omitted.) *State* v. *$7379.54 United States Currency*, 80 Conn. App. 471, 476–77, 844 A.2d 220 (2003).

[3] Our case law does not assign any specific quantum for the burden of proof imposed on those who move for common-law return of seized property outside the realm of "in rem" proceedings authorized by General Statutes § 54-36h (b) (state's burden to prove all material facts by clear and convincing evidence in asset forfeiture proceeding). Here, the state has made no proprietary claim to the computer material or information at issue, asserting instead that it constitutes evidence of criminal unauthorized use of a computer or evidence that a particular person participated in the offense of unauthorized use of a computer. As to the applicable burden of proof for the return or suppression of these items, however, some guidance is derived from the Forgiones' allegations that the search and seizure warrants at issue are insufficient on their face and on the further allegations that the respective magistrates lacked probable cause for believing the existence of the grounds on which the warrants were issued. As such, with the exception of the missing elements of required demonstration that false or misleading statements were presented to the magistrate for review, the Forgiones' insuffi-

On or around October 13, 2004, Hayden, then a freshman at Quinnipiac, made a telephone complaint to Griffen, who served as the school's information security officer.[4] Hayden complained of computer problems, indicating his belief that someone had been interfering

ciency claims appear to mimic closely those raised when testing the accuracy of a search warrant under the principles of *Franks v. Delaware,* 438 U.S. 154, 156, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); see also the "Movants' Supplemental Memorandum Re: Return of Unlawfully Seized Property and Suppression of Evidence," under date of September 14, 2005 (apparently contesting truthfulness of warrant affidavits at issue insofar as affiants "claimed to have 'personal knowledge of the facts and circumstances as related herein'"). In a *Franks* hearing, "the [movant] has the burden of proving a *Franks* violation *by a preponderance of the evidence. Franks v. Delaware,* [supra, 156]; *State v. Telesca,* 199 Conn. 591, 604–605, 508 A.2d 1367 (1986)." (Emphasis added.) *State v. Bergin,* 214 Conn. 657, 670 n.10, 574 A.2d 164 (1990).

Reason and logic, including the civil nature of the motion at issue, lead the court to adopt the preponderance of the evidence burden of proof contemplated by *Franks* and its progeny as opposed to the clear and convincing burden of proof utilized in statutory in rem claims. Even so, taken as a whole, the Forgiones have been unable to meet their burden of proving the alleged deficiencies in the warrants at issue. To the contrary, the clear and convincing standard of evidence presented in this case establishes that the warrants at issue are patently *valid* and, thus, lawful. See *State v. $7379.54 United States Currency,* 80 Conn. App. 471, 475, 844 A.2d 220 (2003) (clear and convincing evidence is that which "induces in the mind of the trier a reasonable belief that the facts asserted are *highly probably* true, [and] that the probability that they are true or exist is *substantially greater* than the probability that they are false or do not exist" [emphasis in original; internal quotation marks omitted]).

[4] At the hearing on this motion, the majority of the technical evidence was adduced through Griffen's direct and cross-examination. Griffen was called as a witness by the Forgiones, and the state stipulated to his status as an expert in the field of computer information and technology. The court finds that Griffen was an objective and unbiased witness who has special skill and expertise in the field of computer technology and information sharing processes. In addition to the detailed, consistent substance of Griffen's opinions, the court viewed his testimony "based on its firsthand observation of [his] conduct, demeanor and attitude"; (internal quotation marks omitted) *State v. Owens,* 63 Conn. App. 245, 251, 775 A.2d 325, cert. denied, 256 Conn. 933, 776 A.2d 1151 (2001); and on its review of the evidence as a whole. Under such scrutiny, the court finds that throughout, the evidence and testimony provided by Griffen was fair, impartial, without allegiance to any party to this proceeding and, thus, highly credible.

with his Quinnipiac assigned and registered e-mail account. Hayden stated that some of his e-mail messages had been deleted, that his course schedule had been altered and that his Quinnipiac based password had been changed. Hayden assured Griffen that he had never given anyone the password to his e-mail account. Hayden specifically complained of concerns that he was being stalked by an Internet intruder, however, especially since he had recently broken off a relationship with a girlfriend. Although Hayden indicated that his former girlfriend was very angry as the result of their breakup, Hayden did not provide the identity of this girlfriend when making his fall 2004 complaints.

By June, 2005, Griffen had obtained new computer equipment that would allow him to investigate interferences with student e-mail accounts. Griffen attempted to contact Hayden in order to utilize the new computer equipment to investigate further the student's stated information technology problems. Hayden then explained to Griffen that the previously complained of e-mail interference had continued during the spring, even though Quinnipiac's technology department had "reimaged" his hard drive, with the resultant erasure of digital evidence of the e-mail interference. Using his new equipment, Griffen examined Quinnipiac's network computer e-mail logs and was able to access the times and dates in which Hayden's e-mail account had been entered into by an outside source, ostensibly unrelated to Quinnipiac. Griffen discovered that Hayden's university based e-mail account was accessed by someone from the IP address known as "24.151.1.122."[5] Griffen credibly testified that Quinnipiac's e-mail logs established that someone from the 24.151.1.122 IP

---

[5] Griffen credibly testified that an IP address consists of a series of numbers that serve as labels for computer Internet connections, providing technology experts with the capacity to trace and to identify source and recipient IP addresses.

address accessed two university e-mail accounts. Quinnipiac had assigned those e-mail accounts to Hayden and to an incoming freshman named Meghan Forgione.

With reasonable technological accuracy, Griffen determined that the IP address 24.151.1.122 originated from Charter Communications (Charter), an Internet service provider.[6] Upon discovering that information, Griffen contacted the Hamden police department and related his suspicion that some person or persons using the IP address 24.151.1.122 from outside the Quinnipiac network had contacted and interfered with two university based e-mail accounts. Hamden police officers procured an affidavit from Griffen relating the aforementioned information and used this affidavit in preparing their own affidavit, which supported an application for a search warrant to access Internet subscriber information at Charter. On the basis of the Hamden police officers' affidavit, on July 13, 2005, the court, *Arnold, J.*, approved the requested search and seizure warrant after finding probable cause that designated subscriber information maintained by Charter for IP address 24.151.1.122 constituted "evidence of . . . or that a particular person participated in the commission of the offense of: Unauthorized use of a Computer [in violation of General Statutes §] 53-451."[7]

In response, on July 14, 2005, Charter identified the 24.151.1.122 IP address as belonging to Perry Forgione

---

[6] It is uncontroverted that Charter is a cable company providing Internet service to customers in the region of Southbury.

[7] General Statutes § 53-451 (b) provides in relevant part that it is a criminal offense for any person to use a computer or computer network without authority and with the intent to, among other things: "(1) Temporarily or permanently remove, halt or otherwise disable any computer data, computer programs or computer software from a computer or computer network [and to] (7) Falsify or forge electronic mail transmission information or other routing information in any matter in connection with the transmission of unsolicited bulk electronic mail through or into the computer network of an electronic mail service provider or its subscribers."

of Southbury and so advised the Hamden police.[8] On that same day, but not previously, Hayden told Griffen that Meghan Forgione was his former girlfriend and that he had not been to her residence since March, 2005. Hayden reiterated that he had never given Meghan Forgione any passwords to any of his e-mail accounts.

On the basis of the information acquired through July 14, 2005, the Hamden police prepared an affidavit to support their request for a search warrant that would enable them to seize as evidence all computer equipment and devices from the Forgione home in Southbury, the ostensible source of the 24.151.1.122 IP address. On that day, the warrant affidavit was submitted to the court, and the court, *Taylor, J.*, approved the search and seizure warrant after a finding of probable cause that the designated computers and related materials at the Forgione home constituted "evidence of . . . or that a particular person participated in the commission of the offense of: Unauthorized use of a Computer [in violation of § 53-451]."

As a result of the subsequent search of the Forgione home, three computers, a wireless router, keyboard, display screen, floppy drive disk and two floppy disks (computer items) were seized. Through their motion, the Forgiones seek return of the seized computer items as well as return of the seized subscriber information. The Forgiones further seek a court order suppressing the use of such evidence in any criminal proceedings that may involve Meghan Forgione or any member of her family. In responding to the petitioners' requests, the court must assess the sufficiency of the search warrants at issue.

---

[8] It is uncontroverted that Perry Forgione lived at 161 Coachman's Drive in Southbury with Denise Forgione and Meghan Forgione at all times relevant to the subject of the motion at issue.

## II

## APPLICATION OF LAW TO FACTS

Although the facts of the present case involve late twentieth century features of Internet technology, so-called cybercommunications, computer hardware, software and jargon that developed only late in the twentieth century, the applicable law remains constant insofar as search and seizure issues are concerned. Generally, "there is a 'longstanding rule that there is an underlying presumption of validity with respect to the affidavit supporting a warrant.' *State* v. *Dolphin*, 195 Conn. 444, 457, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985)." *State* v. *Bergin*, 214 Conn. 657, 666, 574 A.2d 164 (1990).[9] "The law regarding probable cause and the standards for upholding the issuance of a search warrant are well established. [The court will] uphold the validity of [a search] warrant . . . [if] the affidavit at issue presented a substantial factual basis for the [issuing judge's] conclusion that probable cause existed. . . . [T]he [issuing judge] is entitled to draw reasonable inferences from the facts presented. When [an issuing judge] has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the [issuing judge]. Whe[n] the circumstances for finding probable cause are detailed, whe[n] a substantial basis for crediting the source of information is apparent, and when [an issuing judge] has in fact found probable cause, the reviewing court should not invalidate the warrant by application of rigid analytical categories. . . . Probable cause to search exists if: (1)

---

[9] Courts use the same measure for testing the sufficiency of search warrant affidavits as they use in testing arrest warrant affidavits, such as those at issue in *State* v. *Dolphin*, supra, 195 Conn. 456. See *State* v. *Bergin*, supra, 214 Conn. 666 n.8.

there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. . . . In determining the existence of probable cause to search, the issuing [judge] assesses all of the information set forth in the warrant affidavit and should make a practical, nontechnical decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . . [The court] view[s] the information in the affidavit in the light most favorable to upholding the [issuing judge's] determination of probable cause. . . . In a doubtful or marginal case . . . our constitutional preference for a judicial determination of probable cause leads us to afford deference to the [issuing judge's] determination. . . . Probable cause, broadly defined, [comprises] such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred." (Internal quotation marks omitted.) *State* v. *Eastwood*, 83 Conn. App. 452, 460–61, 850 A.2d 234 (2004).

The Forgiones raise several arguments in support of their claims that the affidavits supporting the search and seizure warrants lack sufficient facts demonstrating probable cause so that the seized evidence should be suppressed and returned. First, the Forgiones argue that the search warrant affidavits are "infected with double hearsay" information, purporting to represent Griffen's statements about what Hayden told him concerning a romantic relationship and breakup with Meghan Forgione; the Forgiones submit that because this "double hearsay" was never substantiated by independent evidence, it constitutes an unreliable basis for the magistrates' issuance of the search and seizure

orders. Second, the Forgiones claim that the IP address found by Griffen does not directly prove that the Forgione computers were used to commit a crime and that Griffen's affidavit does not provide information as to when and where the Internet connection was accessed.[10] Inherently intertwined with the second argument is the Forgiones' further argument that in order to find probable cause, the supporting affidavit would have to include a police interview with Hayden. Had the interview been conducted, they argue, the court would have learned that the Forgiones' residence had a wireless Internet connection that could be accessed by anyone within a 150 foot radius of their home. They claim that anyone, especially Hayden, who has a laptop computer with a wireless Internet adaptor, could access the Internet from inside or outside the Forgione residence and that therefore, there is insufficient evidence to establish probable cause for the searches and seizures at issue. Finally, the Forgiones argue that the search warrant was improperly issued to provide access to their proprietary information held by or at Charter in violation of their privacy interests.

The state counters with several arguments in support of its general assertion that the search warrants meet all applicable probable cause requirements. First, the state responds that the Forgiones have applied the incorrect legal standard in their argument that portions of Griffen's affidavit should not have been considered and contain unreliable double hearsay; the state further argues that the totality of the circumstances promote

[10] As subsequently further discussed, the Forgiones argue that the IP address is linked to the cable modem outside of their residence and that the address is analogous to a telephone number rather than an actual telephone so that the evidence of the IP address being used to access the account is insufficient without additional evidence that the seized computers were, in fact, used in the course of criminal conduct or that they serve as evidence of the same.

the finding of sufficiency in the underlying warrant affidavits. Second, the state asserts that the information provided by Griffen, as presented in the warrant affidavits, is sufficient to establish probable cause for search and seizure of the subscriber information linked to the IP address because the Forgiones do not have a fourth amendment privacy interest in this data, thereby rendering it subject to search and seizure. Third, the state argues that the police were not required to interview Hayden prior to obtaining a search warrant because the officers had established probable cause on the basis of the IP address and the information provided by Griffen. As such, an interview of Hayden was not essential to the establishment of probable cause for search and seizure of the subscriber information or computer materials at issue.

A

"Double Hearsay" Argument

The Forgiones first argue that the evidence should be suppressed and returned because Griffen's affidavit contains an unreliable double hearsay statement from Hayden about his relationship with Meghan Forgione and his access to the Forgione Internet connection. In several respects, this argument and related evidence fail to overcome the warrants' presumption of validity, and so it fails to provide the Forgiones with the succor they seek. See *State* v. *Bergin*, supra, 214 Conn. 666; *State* v. *Dolphin*, supra, 195 Conn. 457; *State* v. *Eastwood*, supra, 83 Conn. App. 460–61.

The Forgiones attempt to support their position using the principles of *State* v. *Morrill*, 205 Conn. 560, 534 A.2d 1165 (1987). They argue that our Supreme Court therein established a requirement that whenever law enforcement officers seek a search warrant on the basis of information provided by a third party, that information must meet an "independent basis for reliability

test" as enunciated in *Morrill.* See id., 568. Using this argument, the Forgiones assert that the court should not have considered Griffen's double hearsay statements as related through the search and seizure warrant affidavits because those statements did not meet *Morrill*'s "independent basis for reliability test." Although vigorous, this aspect of the movants' argument is derived from miscues and promotes misapplication of *Morrill*'s lessons.

Both the text and context of *Morrill* make it clear that its "independent basis for reliability test" is required only in cases in which law enforcement officers attempt to utilize information that is somehow suspect or not subject to a presumption of dependability, such as information from so-called confidential informants, in an effort to invade an individual's constitutionally protected privacy interests. In *Morrill*'s factual setting, a search and seizure warrant affidavit was prepared by law enforcement officers and presented to a magistrate in an effort to seek access to property where the defendant was conducting drug sales. The affidavit was prepared by a police lieutenant who had received information from a police detective who relayed information provided by a confidential informant. The confidential informant's information was found to have been corroborated and, therefore, reliable. The defendant claimed, however, that the affidavit nonetheless was defective because it contained "double hearsay because the informant's information was relayed from [the detective] to the [lieutenant]" acting as the affiant. Id. The Supreme Court rejected the defendant's double hearsay argument, finding that "[a] law enforcement officer, *like the general public, is generally presumed to be reliable, and thus no special showing of such reliability . . . is necessary to establish probable cause. . . .* Thus, the fact that [the lieutenant]

received the informant's information from [the detective] does not affect the validity of the affidavit, and this claim is without merit." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 568–69; see also *State* v. *Smith*, 38 Conn. App. 29, 39, 658 A.2d 156 (1995).

Thus, *Morrill* expressly reinforces the axiom that law enforcement officers may presume the reliability of information provided by members of the general public, although they may not presume the reliability of those who operate as a "snitch" or a confidential informant in aid of a police investigation. The facts of the present case clearly establish that Griffen here relayed information to the Hamden police department in his capacity as a member of the general public, not as a confidential informant. Accordingly, the information he gave to the law enforcement officers, and which they used in the preparation of the affidavits supporting their search and seizure warrant applications, was not subject to the "independent basis for reliability test" here promoted by the Forgiones. The facts of the present case clearly and convincingly demonstrate that Griffen reviewed the Internet records at issue in the course of his official work capacity at Quinnipiac, not at the request of law enforcement officers, and not in the course of aiding an ongoing criminal investigation. All of the computer accounts which he searched using his new computer equipment, as described in part I, and all of the e-mail transactions and printouts at issue are either the property of Quinnipiac or are accessible through Quinnipiac's proprietary computer services.[11]

---

[11] Griffen credibly testified that as of May, 2005, when Meghan Forgione was admitted as a student at Quinnipiac, she would have been provided with a school based Internet account and access to information concerning other students through an Internet program or service known as "The Facebook." As the result of his investigation and research into the Quinnipiac computer systems, Griffen concluded in July, 2005, that Meghan Forgione was responsible for the changes Hayden complained of having affected his Quinnipiac based e-mail accounts. Through his investigations, Griffen further

Both Quinnipiac and Griffen stand in the position of being citizen-members of the general public. There is, therefore, no reasonable or legal basis for questioning the reliability of Griffen's statements, Quinnipiac's computer data and resources or the link to the Forgione IP address that was exposed by Griffen using Quinnipiac's computer system. Moreover, Griffen was perfectly entitled to view as reliable Hayden's comments to him, and the Hamden police were equally entitled so to view Hayden's comments to Griffen because members of "the general public [are] generally presumed to be reliable, and thus no special showing of such reliability . . . is necessary to establish probable cause."[12] (Internal quotation marks omitted.) *State* v. *Smith*, supra, 38 Conn. App. 39. Thus, under the factual circumstances of the present case, both warrant issuing courts could have reasonably found probable cause without relying on Griffen's statements concerning Hayden's relationship with Meghan Forgione. Griffen investigated the Internet activity on the basis of a student complaint of harassment and not directly because of Hayden's

concluded that both Hayden's and Meghan Forgione's Internet accounts were based in Southbury. Griffen, however, never provided law enforcement officials with any information concerning a relationship between Hayden and Meghan Forgione.

[12] In the "Movants' Supplemental Memorandum Re: Return of Unlawfully Seized Property and Suppression of Evidence," submitted under date of September 14, 2005, the Forgiones interpret *Morrill* as requiring that "the judicial officer to whom a warrant application is submitted need not reject the warrant affidavit simply because it is based on multiple hearsay, but for the warrant to issue, the judicial officer must have a reasonable basis for crediting the veracity and source of knowledge of each person constituting a link in that chain, whether they are members of the general public, police officers, confidential informants or anything else."

Such an interpretation obfuscates the lawfully designated distinction between confidential informants and information sources who are intrinsically reliable, such as members of the public at large. *State* v. *Morrill*, supra, 205 Conn. 568–69; see also *State* v. *Smith*, supra, 38 Conn. App. 39. The court chooses to adhere to that lawful distinction and declines the opportunity to adopt the movants' proposed interpretation of the implications of *Morrill*.

relationship with Meghan Forgione. In fact, Griffen testified at the hearing that he was not aware of the name of Hayden's former girlfriend until after he discovered that Hayden's e-mail account had been accessed from the Forgiones' IP address.

Moreover, as the state has aptly countered, through this aspect of their argument, the Forgiones would have the court utilize a legally incorrect standard to determine whether an informant's information is reliable when ascertaining the presence or absence of probable cause for issuing permission to search and seize designated property or persons. As the state accurately notes, Connecticut has "adopted *the totality of the circumstances standard of Illinois* v. *Gates*, 462 U.S. 213, 233, 103 S. Ct. 2317, 76 L. Ed. 2d [527] (1983), in considering informants' reports for probable cause" for search and seizure purposes. (Emphasis added.) *State* v. *Mordowanec*, 259 Conn. 94, 110, 788 A.2d 48, cert. denied, 536 U.S. 910, 122 S. Ct. 2369, 153 L. Ed. 2d 189 (2002), citing *State* v. *Barton*, 219 Conn. 529, 594 A.2d 917 (1991) (en banc). "In determining whether to issue a search warrant, the issuing magistrate reviews the entire affidavit and *the totality of its circumstances* to determine whether probable cause exists for its issuance." (Emphasis added.) *State* v. *Thatcher*, 71 Conn. App. 516, 528 n.6, 802 A.2d 908, cert. denied, 261 Conn. 940, 808 A.2d 1134 (2002). Under the totality of the circumstances test, "[w]hen hearsay information from third parties is relied on by the affidavit, the veracity or reliability and basis of knowledge of those persons are highly relevant in determining the existence of probable cause." (Internal quotation marks omitted.) *State* v. *Mordowanec*, supra, 110; see also *State* v. *Barton*, supra, 552.

Viewed under the lens of the necessary totality of the circumstances test, it is apparent that Hayden's statements bear indicia of reliability and veracity in and of themselves, even if the court had not reviewed

Hayden's hearsay comments to Griffen with the presumption of reliability afforded the general public, as contemplated by *Morrill* and *Smith*. The evidence clearly and convincingly establishes that only after Griffen had determined the identity of the Forgione IP address did Hayden state to him that he had not been to the Forgione residence or accessed his e-mails from the residence since March, 2005. Hayden inherently possesses the requisite "basis of knowledge" as to when he had been to the Forgione residence and when and where he had accessed his e-mail account. Especially when viewed in the totality of the circumstances of Griffen's Internet identification of the IP address, there is insufficient basis for Griffen to have doubted the reliability of Hayden's statements concerning his contact with the Forgiones or their computer systems. Similarly, using the totality of the circumstances test, there was an abundant basis, within the four corners of either of the search and seizure warrant affidavits, to indicate reasonably to either warrant issuing judge that probable cause existed for the issuance of the requested orders.

## B

### "No Crime Committed" Argument

The Forgiones also claim that the search warrant affidavits used to access the computer materials at their home were further defective in that they lacked the requisite proof that these items seized from their home were the actual items used to commit a crime. They argue that the IP address, found by Griffen, identifies only the computer modem located outside of the house, but that this address cannot be attributed to particular computers located inside the house. As such, the Forgiones protest that the search warrant affidavits at issue do not permit a reasonable determination as to whether one, or indeed any, of the computers or attendant materials in their home had actually been used to access

Hayden's e-mail account or otherwise to violate § 53-451. The Forgiones further assert that because of the portability of laptop computers in general, and specifically because of the availability of a "wireless" Internet connection at their home, anyone within a 150 foot radius could have accessed the Internet through their modem, thus rendering the search warrant affidavits at issue fatally flawed. The court finds that the search warrant affidavits at issue sufficiently described the place to be searched and the things to be seized, thus rendering this second argument ineffective in overcoming the presumptive validity of the warrant. See *State* v. *Bergin*, supra, 214 Conn. 666; *State* v. *Dolphin*, supra, 195 Conn. 457; *State* v. *Eastwood*, supra, 83 Conn. App. 460–61.

"The fourth amendment requires all warrants to particularly describ[e] the place to be searched, and the persons or things to be seized. The particularity requirement reflects two concerns. . . . The first concern is the deterrence of general, exploratory rummaging in a person's belongings. . . . The second concern is that the scope of a lawful search will be limited to the places in which there is probable cause to believe that [the items sought] may be found." (Internal quotation marks omitted.) *State* v. *Jarrett*, 82 Conn. App. 489, 499, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004).

"In construing the terms of a warrant, the circumstances and nature of the activity under investigation dictate a practical margin of flexibility. . . . This principle, which applies in the law of the execution of warrants, is consistent with the concomitant principle, which applies in the law of the validity of warrants, that probable cause is to be determined based on the totality of the circumstances, *viewed in a common sense and practical manner.*" (Emphasis added; internal quotation marks omitted.) Id. The court utilized this

common sense and practical approach in assessing the information obtained by Griffen concerning the interference with the Quinnipiac computers, and the relationship of Meghan Forgione to the school and to the IP address at issue, as this information was relayed through the warrant affidavits. From this approach, it is apparent that the court found that there was an abundant, reasonable basis for inferring that the computer used to harass Hayden would be found in the Forgione home. Even if the search warrant at issue did not exclude the possibility that another computer, at another location, could have been used to commit the crime, it is a reasonable conclusion to allow a search of the computers located inside the house. Moreover, even if outside computers could technically access the Forgione modem from a remote location, it would be unrealistic and unnecessary to expect the police to search every computer that was in a 150 foot radius of the home, given Meghan Forgione's relationship to Quinnipiac and its computer system, as ascertained by Griffen during July, 2005. Simply put, the warrant affidavit presented to Judge Taylor contained, within its four corners, adequate and sufficient basis for the magistrate's conclusion that there was probable cause to seize the computer materials at issue upon search of the Forgione home.

Furthermore, if the court were to adopt the arguments promoted by the Forgiones, the court would be effectively requiring law enforcement officers to present the magistrate with information that surpasses the level of "reasonable" or "probable" cause before a search and seizure warrant is executed; as evinced by the fact that the Forgiones have provided no legal authority for this aspect of their arguments, it is clear that the law of this state neither requires nor sanctions such a higher level of evidence before the magistrate

may properly approve the application for a search warrant. Simply put, "[a]s a matter of state constitutional law under article first, § 7, the task of the magistrate issuing the warrant is to make a practical, nontechnical decision whether *there is a fair probability* of finding contraband or evidence of a crime in a particular place. In coming to that decision, the magistrate must consider *all the circumstances set forth in the affidavit*, including the factual circumstances from which the veracity and the basis of knowledge of persons supplying hearsay information can be determined." (Emphasis added.) *State* v. *Barton*, supra, 219 Conn. 552.

Nonetheless, the Forgiones have valiantly enumerated suggested investigations that the Hamden police department could have conducted before preparing the warrant affidavit seeking access to their computers, and before submitting the warrant affidavit to Judge Taylor for review and approval. For instance, the Forgiones propose that the Hamden police could and should have interviewed Hayden, who purportedly possessed sophisticated information concerning the use of "wireless" Internet connections and other ephemera related to Hayden's skill and expertise with computers. The Forgiones presume that Hayden would willingly share such information with the law enforcement officers engaged in their preliminary investigation and, in fact, urge the court to conclude that the Hamden police "were required to interview Mr. Hayden both to [receive directly] his account of what had gone on, i.e., establish that the network access found by [Griffen] was actually without his knowledge or consent, and to make their own assessment of his reliability."[13] As emphasized by

[13] The Forgiones' argument appears to be based on the premise that once Hayden had provided the investigating officers with certain, specified information about the ability to access their computer from a remote location, this information would have been engrafted onto the warrant affidavit, and the magistrate would have *declined* to permit the search and seizure of their home in Southbury. The court declines to adopt that premise, finding it to be speculative in nature, and well beyond the "four corners" of the warrant

*Barton,* however, although a magistrate may, from time to time, demand "more information," a warrant should not be invalidated merely because another court "might, in the first instance, have reasonably declined to draw the inferences that were necessary" to establish the existence of "a substantial basis for concluding that probable cause existed.[14] *State* v. *Barton,* supra, 219 Conn. 552–53.

Through this aspect of their argument, the Forgiones ostensibly urge the court to adopt an overly broad application of the principles of affirmative disclosure as enunciated by our Supreme Court in *State* v. *Buddhu,* 264 Conn. 449, 470–71, 825 A.2d 48 (2003), cert. denied, 541 U.S. 1030, 124 S. Ct. 2106, 158 L. Ed. 2d 712 (2004). As such, they bypass the critical language in that opinion, which reminds us that "if the warrant affidavit [at issue] established independent probable cause to search [the] residence . . . then [an] inquiry into what the police officers knew, or should have known, about [alternate opportunities for accessing the computers at issue] is unnecessary." Id., 471. More appropriately read, *Buddhu* would apply to the present circumstances by requiring the Hamden police to exclude the Forgione residence from their search warrant application only if they knew, or should have known, that there was no probable cause to search that property. In the present case, however, in which the warrant affidavit provided abundant, independent evidence to support the requisite "substantial basis for concluding that probable cause"; *State* v. *Barton,* supra, 219 Conn. 553; to search the Forgiones' home existed, as discussed previously,

affidavit as actually prepared and submitted to the magistrate for review in connection with access to the Forgiones' property.

[11] As noted by the state in response to this aspect of the Forgiones' argument, "an affidavit supporting a search warrant need not establish beyond a reasonable doubt that incriminating evidence will be found on the premises to be searched." *United States* v. *Blakeney,* 942 F.2d 1001, 1025 (6th Cir. 1991), cert. denied, 502 U.S. 1035, 112 S. Ct. 881, 116 L. Ed. 2d 785 (1992).

on the basis of Griffen's reports and analysis of information available, while other information from Hayden or alternative sources may have been demanded, that information was not necessary to support the warrant at issue. See *State* v. *Buddhu*, supra, 471.

## C

### "Privacy Interest in IP Address" Argument

During the hearing on this motion, the Forgiones orally raised the argument that they had a fourth amendment privacy interest in their subscriber information to their IP address[15] and that this privacy interest was improperly violated through the execution of the warrant permitting Charter to turn over this information to the Hamden police. The state counters that there is no relevant expectation of privacy at issue in the present case because the Forgiones voluntarily provided Charter with this information when they established the IP address. "[The] IP address routing system is essential to the basic functionality of the Internet, in a similar fashion as mailing addresses and telephone numbers are essential to the functionality of the postal service and telecommunications system." *Register.Com, Inc.* v. *Verio, Inc.*, 356 F.3d 393, 409–10 (2d Cir. 2004). Thus, in the present case, the IP address identified the Forgione street address, like a telephone number would have in a telephone book.

Viewing the evidence as a whole, it is clear that the Forgiones ceded any expectation of privacy in their

---

[15] Contemporary case law has explicated some aspects of the Internet for legal research purposes. For instance, as one court has explained: "The Internet is comprised of numerous interconnected communications and computer networks connecting a wide range of end-users to each other. . . . Every end-user's computer that is connected to the Internet is assigned a unique Internet Protocol number ('IP address'), such as 123.456.78.90, that identifies its location (i.e., a particular computer-to-network connection) and serves as the routing address for email, pictures, requests to view a web page, and other data sent across the Internet from other end-users." (Citation omitted.) *Register.Com, Inc.* v. *Verio, Inc.*, 356 F.3d 393, 409 (2d Cir. 2004).

underlying subscriber information, such as their residential address and other information, when they voluntarily entered into an agreement for Charter to provide them with an Internet account servicing their home in Southbury. The Forgiones have no fourth amendment privacy interest in that subscriber information because "[w]hat a person knowingly exposes to the public, even in his own home . . . is not a subject of Fourth Amendment protection . . . ." (Internal quotation marks omitted.) *State* v. *Mann*, 271 Conn. 300, 307, 857 A.2d 329 (2004), cert. denied, 544 U.S. 949, 125 S. Ct. 1711, 161 L. Ed. 2d 527 (2005). More particularly, when an individual enters into an agreement for "Internet service, he knowingly revealed all [of the] information connected to the IP address . . . . He cannot now claim to have a Fourth Amendment privacy interest in his subscriber information." *United States* v. *Kennedy*, 81 F. Sup. 2d 1103, 1110 (D. Kan. 2000). As was the case with the defendant in *Kennedy*, who sought to suppress subscriber information that his Internet provider had released to the police pursuant to a search warrant, this court finds that the Forgiones have not met their burden of proving that they had any objectively reasonable expectation of privacy in that account information. Having failed to establish a reasonable basis for claiming to have an expectation of privacy in the subscriber information, once it was voluntarily divulged to Charter as the Internet service provider, the Forgiones cannot achieve their goal of shielding this information merely by referencing fourth amendment privacy interests.[16]

---

[16] In reaching this conclusion, the court recognizes and appreciates the Forgiones' insistence that law enforcement's access to personal Internet subscriber information should not be unfettered. Rather, "[l]imits are placed on a governmental entity's ability to acquire subscriber information; for example, *the governmental entity needs to obtain a search warrant or court order to get this information* See 18 U.S.C. § 2703 (c) (1) (B). No such requirements are placed upon private parties. See 18 U.S.C. § 2703 (c) (1) (A)." (Emphasis added.) *United States* v. *Bach*, United States District Court, Docket No. 01-221, 2001 U.S. Dist. LEXIS 22109 (D. Minn. October

## III

## CONCLUSION

Wherefore, for the foregoing reasons, the court hereby denies the Forgiones' motion for the return of unlawfully seized property and the suppression of evidence, submitted under date of July 29, 2005.

### STATE OF CONNECTICUT *v.* GREGORY R. LINDSEY*

Superior Court, Judicial District of Tolland
File No. MV-03-348306

Memorandum filed March 23, 2005

*Matthew J. Collins,* for the defendant.

*Matthew C. Gedansky,* supervisory assistant state's attorney, for the state.

---

24, 2001), rev'd on other grounds, 310 F.3d 1063 (8th Cir. 2002), cert. denied, 538 U.S. 993, 123 S. Ct. 1817, 155 L. Ed. 2d 693 (2003).

Notwithstanding the vigor of the Forgiones' argument to the contrary, the court finds that such limits effectively protect any constitutional interests an individual may have when he or she has released subscriber information to an Internet service provider. Here, the court has concluded that by presenting Griffen's information through a search warrant affidavit, and by securing a magistrate's permission before accessing the Forgiones' subscriber information from Charter, the Hamden police utilized the appropriate protocol and observed the "limits" appropriately imposed on their access to the subscriber information at issue, thereby avoiding any constitutional impropriety.

* Affirmed. *State* v. *Lindsey,* 98 Conn. App. 250, 907 A.2d 1261, cert. denied, 280 Conn. 948, 912 A.2d 481 (2006).