43 A.3d 1253 (2012)
426 N.J. Super. 240
STATE of New Jersey, Plaintiff-Respondent,
v.
Patrick DeFRANCO, Defendant-Appellant.
No. A-2054-10T4
Superior Court of New Jersey, Appellate Division.
Argued January 24, 2012.
Decided June 8, 2012.
*1254 Judson L. Hand argued the cause for appellant (Law Offices of Alan L. Zegas, attorney; Alan L. Zegas, Chatham, and Mr. Hand, on the briefs).
Steven A. Yomtov, Deputy Attorney General, argued the cause for respondent (Jeffrey S. Chiesa, Attorney General, attorney; Mr. Yomtov, of counsel and on the brief).
Before Judges PAYNE, REISNER and SIMONELLI.
The opinion of the court was delivered by
PAYNE, P.J.A.D.
A superseding indictment was handed down on October 28, 2009, charging defendant, Patrick DeFranco, with first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a(2)(b), second-degree sexual assault, N.J.S.A. 2C:14-2c(4), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4a. Shortly thereafter, defendant moved to suppress evidence of a telephone conversation that defendant had engaged in with the complaining victim, a former *1255 student, which the police intercepted with the victim's consent and which constituted a significant part of the evidence against defendant. The court denied the motion, determining that, under the circumstances presented, defendant had no reasonable expectation of privacy in the cell phone number used to place the calla number that defendant disclosed to the school where he taught and was furnished by the school to its School Resource Officer, a policeman, shortly before the intercepted call was made.
Following the denial of his suppression motion, on June 2, 2010, defendant pled guilty to second-degree sexual assault pursuant to a negotiated plea agreement. As a factual basis for his plea, defendant admitted to having performed a prohibited sex act on the male victim when he was thirteen years of age. On November 12, 2010, the court sentenced defendant to five years in prison, subject to the registration and other requirements of Megan's Law, N.J.S.A. 2C:7-1 to -23.
Defendant has appealed, raising the following arguments for our consideration:
POINT ONE
THE MOTION JUDGE MADE AN ERROR OF LAW WHEN HE CONCLUDED THAT THE POLICE ACTED REASONABLY IN OBTAINING MR. DEFRANCO'S CELL PHONE NUMBER WITHOUT A VALID SEARCH WARRANT OR GRAND JURY SUBPOENA.
A. Because Mr. DeFranco Had A Reasonable Expectation Of Privacy In His Cell Phone Number, The State Could Acquire It Only Through A Search Warrant Or Grand Jury Subpoena.
B. Mr. DeFranco Did Not Waive His Right To Keep His Cell Phone Number Private By Disclosing It To His Employer Or To A Small Number Of People In Connection With His School Duties.
C. The Motion Judge Also Erred In Concluding That The Doctrine Of Inevitable Discovery Relieved The State Of Its Obligation To Use Court Process To Acquire Mr. DeFranco's Cell Phone Number.
D. Not Only Did The State Act Unlawfully In Obtaining The Cell Phone Number Without A Valid Warrant Or Subpoena, But School Officials Acted Unlawfully In Providing Such Information To The State.
POINT TWO
BECAUSE THE STATE HAS NOT DISPUTED THAT ITS CASE AGAINST MR. DEFRANCO LARGELY DEPENDED UPON THE SECRETLY TAPED CELL PHONE CONVERSATION, HARMFUL ERROR RESULTED FROM THE ADMISSION OF THE RECORDING.

I.
At a hearing on defendant's suppression motion, testimony was offered for the State by Matthew Potter, a detective with the Morris County Prosecutor's Office, and municipal Police Officer Jeffrey Tucker; defendant testified on his own behalf. Det. Potter stated that, on November 4, 2005, he received a somewhat vague report of an alleged sexual assault on a student by a teacher in Randolph, although it was later revealed that the allegations pertained to another municipality. Although Det. Potter had some difficulty arranging an interview with the victim, he was successful in scheduling a meeting for November 10. At that time, the victim gave a statement in which he disclosed that, several years earlier while he was a middle-school student, defendant engaged in sexual activity with him in the closet of a classroom at the school. Because of the *1256 lack of any confirming evidence, the victim agreed to participate in a telephone call with defendant that would be intercepted by Det. Potter. Accordingly, Det. Potter completed an official request for a consensual intercept, which was granted by the Chief Assistant Morris County Prosecutor.
When the call was placed, utilizing a number known to the victim, the victim and Det. Potter were informed that the line had been disconnected. Det. Potter testified that he sought to expedite the matter because defendant remained employed as a schoolteacher. Accordingly, he contacted Det. Frank Perna, a police officer known to him who was employed in the town where defendant taught, and he requested that Det. Perna attempt to obtain the number. Since defendant worked in town, Det. Potter thought that Det. Perna might have access to the information. Det. Perna complied, and through School Resource Officer (SRO) Tucker, a local police officer assigned to the school where defendant worked, the number was obtained.
While the victim remained with Det. Potter on November 10, the new number, which had an area code different from the -973 area code for towns in Morris County, was tried. Although at first the call went to voice mail, on a second try, the call was answered by defendant, who exhibited no surprise that the victim had defendant's number and never indicated that the number, which belonged to defendant's cell phone, was in any respect private. A conversation ensued that centered on sexual contacts between defendant and the victim at the school and the victim's concern that defendant would engage in sexual activities with the victim's siblings, who were students at the school at the time of the call. Near the conclusion of the call, defendant and the victim tentatively agreed to meet on the following day at defendant's condominium, the location of which was described by defendant to the victim. A transcript of the call was introduced into evidence at the hearing.
SRO Jeffrey Tucker testified that, as part of his duties as a police officer, in the period from the middle of 2004 to the beginning of 2008, he was assigned as a School Resource Officer to the middle school where defendant taught. In that capacity, he went in uniform to the school approximately three days per week pursuant to a memorandum of agreement between education and law enforcement officials (MOA) entered by the municipality's Board of Education and its Police Department. His role as SRO was to ensure the safety of those within the school. Additionally, he taught internet safety in defendant's computer class during each of the marking periods when he was assigned to the school. Although SRO Tucker regarded himself as a member of the school's staff, he did not attend teachers' meetings, and his name did not appear in the school directory.
Tucker testified that, in November 2005, he was advised, in his capacity as SRO, of allegations by a former student against defendant, and at one point, he was asked to obtain defendant's telephone number. He did so by requesting the number from the school principal's secretary, and he was given that number pursuant to the principal's authorization.
SRO Tucker testified that defendant's cell phone number appeared in the 2005-2006 Staff Handbook and Directory. Additionally, he testified that he obtained defendant's cell phone number, along with the telephone numbers of all other staff members, and included those numbers in the 2005 update of a School Emergency Operations Plan maintained by the school at its main office and by the local police at the police dispatch desk, to which SRO *1257 Tucker had access.[1] However, SRO Tucker did not obtain defendant's number from the Emergency Operations Plan because he was at school when the request for the number was made. The record does not disclose the source of the telephone number given by the principal's secretary to SRO Tucker.
On cross-examination, SRO Tucker admitted that the following statement preceded the listing of telephone numbers in the Staff Directory:
NOTE: Please respect the privacy of staff members' addresses and phone numbers. . . . This information is not to be shared with anyone not on staff (*Numbers = Unlisted Numbers).

No asterisk was placed after defendant's telephone number. However, SRO Tucker acknowledged that, because the phone number related to a cell phone, it would not have appeared in a directory.
As stated, testimony was also provided by defendant. He testified that he probably gave his contact information to school officials in 1994 when he was hired by the school. Although he did not like to give out his telephone number, because he was not tenured at the time, he testified that he did not object, so as not to rock the boat. However, defendant admitted that he had updated his school contact information by providing his cell phone number at some point after tenure had been granted. It was defendant's understanding that the telephone numbers in the Staff Directory were for the use of staff and professional people, only, and he was aware of the restrictions on access set forth at the beginning of the directory. Although defendant claimed that the omission of an asterisk by his telephone number was an error, it was an error that he had never sought to correct.
Defendant stated that his principal reasons for keeping his cell phone number private were to avoid calls by irate parents seeking to challenge their child's grades and to avoid sales calls. Defendant claimed that he did not know that the police had his cell phone number in connection with the School Emergency Operations Plan, he had not given the school authorization to divulge his number in that connection, and he had been offered no opportunity to object to the inclusion of his number in a document that, but for one page that was included in the Staff Handbook, he did not know existed.
However, defendant acknowledged that he had furnished his telephone number to students and their parents in connection with an overseas school trip to the British Isles that he co-chaperoned. In that connection, a June 18, 1998 letter from him to "EF Travelers" was introduced that concluded with: "If you have any last minute questions, please give me a call at 625-9662"defendant's land line that was later disconnected. That number also appeared in a letter from defendant and his co-chaperone to EF Travelers dated January 7, 1998 and on an undated telephone list bearing the names and telephone numbers of two adults, including defendant, and forty-two students.
At the conclusion of the hearing, the court rendered an oral decision in which it found that defendant, who was not deemed to be entirely credible, did not have a reasonable expectation of privacy in connection with the disclosure of his cell phone number. In this regard, the court noted the evidence that had been adduced demonstrating instances in which defendant had readily given out his number, which remained in the hands of both parents *1258 and students. Additionally, the court found the manner in which the number was obtained was not unlawful, given Tucker's position as the school's Resource Officer. The court observed that, although not technically a member of the school's faculty, he was a de facto staff member. As such, if he had had the Staff Directory available, he could simply have looked up defendant's number. However, instead, SRO Tucker contacted the principal's secretary to obtain the information. The court found it significant that SRO Tucker "didn't get an address, didn't get a file on defendant, didn't get any other personal documents or recordssimply a phone numberand that there was nothing egregious in the manner in which he did so." As a consequence, the suppression motion was denied. Defendant has appealed.

II.
On appeal, defendant argues that the court erred as a matter of law in determining that the scope of protection afforded to him under Article 1, Paragraph 7 of the New Jersey Constitution was equivalent to that afforded to him under the Fourth Amendment to the United States Constitution, when in fact the protections afforded to him under the State's constitution were greater. We agree with defendant's statement of the law, although we perceive nothing in the trial court's opinion suggesting otherwise. As the New Jersey Supreme Court recognized in State v. Reid, 194 N.J. 386, 396-98, 945 A.2d 26 (2008), a decision in which a privacy interest in an IP address was recognized, federal case law interpreting the Fourth Amendment has found no expectation of privacy in information exposed to third parties, such as an internet provider, a telephone company or a bank. Id. at 396, 945 A.2d 26. In contrast, the New Jersey Supreme Court has recognized a right to privacy in such circumstances. Id. at 397-98, 945 A.2d 26. It has recognized a right to privacy in the list of telephone numbers dialed from a person's home telephone, because such numbers could reveal intimate details of a person's life. State v. Hunt, 91 N.J. 338, 346-47, 450 A.2d 952 (1982). See also State v. Hempele, 120 N.J. 182, 202-03, 576 A.2d 793 (1990) (finding a right to privacy in garbage held in closed container); State v. McAllister, 184 N.J. 17, 32-33, 875 A.2d 866 (2005) (finding a right to privacy in bank records); and State v. Domicz, 188 N.J. 285, 297, 907 A.2d 395 (2006) (requiring issuance of a subpoena to obtain utility records).
However, we disagree with defendant's further conclusion that disclosure of his cell phone number should be similarly protected. In this regard, we note that in the Appellate Division's opinion in Reid, the panel stated that "New Jersey appears to have recognized a right to what has been called `informational privacy.'" State v. Reid, 389 N.J.Super. 563, 570, 914 A.2d 310 (App.Div.2007) (quoting Elbert Lin, Prioritizing Privacy: A Constitutional Response to the Internet, 17 Berkeley Tech. L.J. 1085, 1130, 1141-42, 1154 (2002)). The panel described informational privacy in the following terms:
Informational privacy has been variously defined as "shorthand for the ability to control the acquisition or release of information about oneself," Lin, supra, at 1095 n. 42 (quoting A. Michael Froomkin, The Death of Privacy?, 52 Stan. L.Rev. 1461, 1463 (2000)), or "an individual's claim to control the terms under which personal information . . . is acquired, disclosed, and used." Ibid. (quoting Jerry Kang, Information Privacy in Cyberspace Transactions, 50 Stan. L.Rev. 1193, 1205 (1998)). In general, informational privacy
"encompasses any information that is identifiable to an individual. This includes both assigned information, such *1259 as a name, address, or social security number, and generated information, such as financial or credit card records, medical records, and phone logs. . . . [P]ersonal information will be defined as any information, no matter how trivial, that can be traced or linked to an identifiable individual." [Id. at 1096-97.]
We adopt this formulation.
[Reid, supra, 389 N.J.Super. at 570, 914 A.2d 310.]
If the Supreme Court had accepted the formulation adopted by the panel, then defendant would likely be correct. However, the Supreme Court did not do so, stating:
We decline to adopt the "informational privacy" standard outlined by the Appellate Division. See Reid, supra, 389 N.J.Super. at 570 [914 A.2d 310]. The contours and breadth of the standard are not entirely clear, and we need not address those issues in resolving the narrower constitutional question before us.
[Reid, supra, 194 N.J. at 399 n. 3, 945 A.2d 26.]
We perceive a significant difference between the "generated information" afforded protection by the New Jersey Supreme Court in its privacy decisions and the "assigned information" that defendant seeks to protect in this case. The ISP records, the long-distance billing information, the banking records, and the utility usage records of Reid, Hunt, McAllister, and Domicz, respectively, constituted the keys to the details of the lives of those to which the seemingly innocuous initial information pertained. While in some circumstances, knowledge of a telephone number might be equally revelatory, here it was not. The number was simply a number.[2] In the circumstances of this case, we do not find that defendant's professed subjective expectation of privacy is one that society would be willing to recognize as reasonable. State v. Evers, 175 N.J. 355, 369, 815 A.2d 432 (2003) (citing Katz v. U.S., 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 588 (1967); State v. M.A., 402 N.J.Super. 353, 367, 954 A.2d 503 (App.Div.2008) (citations omitted)). That defendant, upon answering a call to his cell phone number, chose to recall intimate details of his past was not a function of the disclosure of the number, but rather a function of defendant's voluntary determination to engage in conversation with a victim that he had previously sexually abused. Thus defendant was complicit in the intrusion into his life of which defendant now complains. Compare, Hennessey v. Coastal Eagle Point Oil Co., 129 N.J. 81, 94, 609 A.2d 11 (1992).
However, if we were to conclude that defendant could maintain a protectable privacy interest in his cell phone number, we find that interest to have been waived. Our principal reason for reaching that conclusion lies in the fact that, in the past, defendant had disclosed his telephone number to the victim. Although defendant had thereafter changed his number when he switched from a land line to a cell phone, there is nothing in the record to suggest that defendant did so in an effort to hide from his victim or to avoid calls from him. Indeed, the record reflects defendant's lack of surprise when contacted by the victim on November 10 and the *1260 absence of any question by defendant as to how the victim had obtained his number. The record additionally reflects the fact that defendant voluntarily disclosed his residence address to the victim and indicated his willingness to engage in further discussion with the victim regarding what had occurred in the past and might occur again in the future. That defendant did not list his number as confidential in the school's Staff Directory and that he offered that number to a multitude of parents and students in connection with a school trip provide additional evidence of the waiver that the Reid Court recognized as possible in situations such as this. Reid, supra, 194 N.J. at 399 n. 2, 945 A.2d 26.
We further find, after consideration of all the circumstances, nothing unreasonable in SRO Tucker's conduct in obtaining the telephone number from the principal's secretary. State v. Maristany, 133 N.J. 299, 304, 627 A.2d 1066 (1993); State v. Bruzzese, 94 N.J. 210, 217, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984). He, as the school's Resource Officer, had an acknowledged obligation, under the MOA between the Board of Education and the Police Department, to preserve the safety of the students, including their freedom from the sexual molestation that the victim envisioned his siblings as potentially enduring. See MOA § 4.12 (concerning sexual offenses). In obtaining defendant's phone numbera number to which SRO Tucker could have had access as a consequence of the Emergency Operations Plan that he himself had assembled and likely could have obtained directly in his de facto capacity as a member of the school's staffSRO Tucker was simply fulfilling the role to which he was assigned. Similarly, the school had an obligation, as set forth in the school handbook, to cooperate with SRO Tucker in cases of suspected abuse, whether sexual or otherwise.
As a consequence, we find no error in the court's determination to deny defendant's motion seeking suppression of the transcript of the intercepted call between him and the victim. We find it unnecessary to discuss whether the number at issue would have been inevitably discovered by the police if access had not been provided in the fashion that occurred.
Affirmed.
NOTES
[1] The 2007 Emergency Operations Plan was introduced into evidence at the trial on the representation that its content was substantially similar to the 2005 plan, which had been discarded at the end of that school year and replaced by updated information.
[2] We distinguish this case from State v. Boyd, 295 Conn. 707, 992 A.2d 1071 (2009), cert. denied, ___ U.S. ___, 131 S.Ct. 1474, 179 L.Ed.2d 314 (2011), upon which defendant relies. In that case the Connecticut Supreme Court found that defendant had a reasonable expectation of privacy in the contents of his cell phone. Id. at 1081. Thus, the decision was similar to Hunt, not the present matter, which did not concern the information generated by use of the phone.