**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5530-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LARRY THOMPSON, a/k/a
KEVIN THOMPSON

    Defendant-Appellant.

_____

Submitted May 12, 2020 – Decided June 1, 2020

Before Judges Fisher and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 15-08-0898 and 16-01-0055.

Joseph E. Krakora, Public Defender, attorney for appellant (Alicia J. Hubbard, Assistant Deputy Public Defender, of counsel and on the brief).

Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney for respondent (David M. Liston, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following denial of his motion to suppress twenty-two clonazepam pills seized without a search warrant, defendant Larry Thompson pled guilty to third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1), and was sentenced in accordance with a negotiated plea agreement. The sole issue on this appeal is whether the Law Division judge erred in denying defendant's motion. More particularly, defendant argues:

> THE PILLS MUST BE SUPPRESSED BOTH BECAUSE THEY WERE DISCOVERED AS A RESULT OF LAW ENFORCEMENT'S UNLAWFUL EXTENSION OF [DEFENDANT]'S DETENTION WITHOUT REASONABLE SUSPICION AND BECAUSE THE STATE FAILED TO SHOW THAT POLICE HAD NOT ENGAGED IN AN ILLEGAL SEARCH OF [DEFENDANT]'S WALLET. U.S. CONST. AMENDS. IV, XIV; N.J. CONST. ART. I, ¶ 7.
>
> a. The extension of the detention after the dissipation of reasonable suspicion was improper.
>
> b. The State failed to prove by a preponderance of the evidence that the police legally obtained [defendant's] name.

We reject defendant's contentions and affirm.

Patrolman Daniel Mazan of the New Brunswick Police Department was the only witness to testify at the suppression hearing. Around 11:00 p.m. on

2

September 14, 2014, Mazan was dispatched to the Albany Street train station on the report of a disturbance involving a black male, who was wearing "a black hood [sic] with a red stripe" and "pull[ed] a blade out on a man." Arriving within minutes of receiving the dispatch, Mazan encountered defendant, a black man, who was wearing a black jacket with red stripes. Defendant was arguing with several people.

Defendant complied with Mazan's order to show his hands. A pat-down search of defendant revealed no weapons. When Mazan asked defendant for his name or identification, defendant initially gave a false first name and year of birth then "volunteered" his real name and birth year. A warrant check of defendant's true identity revealed outstanding warrants.

Mazan arrested defendant on the warrants and drove him back to police headquarters. During the ride, Mazan heard defendant "moving in the back seat, shuffling around. And [he] heard what sounded like rattling." From the camera position inside his car, Mazan saw defendant lifting his buttocks forward. At headquarters, Mazan performed a more thorough search of defendant's pants pocket. The officer did not find "anything," but continued to hear the rattling noise. Defendant complied with Mazan's request to turn over what he would otherwise "retrieve" if defendant refused. Defendant gave Mazan a bottle of

3

pills with its prescription label partially scratched off.  The pills later tested positive for clonazepam, the generic name for Klonopin.

Defendant's challenge to his arrest and Mazan's ensuing search primarily arose from the following exchange on cross-examination:

> DEFENSE COUNSEL:  So how did you come to learn that his name was Larry?
>
> MAZAN:  He told me it.
>
> DEFENSE COUNSEL:  It wasn't that you looked in his wallet and looked at his ID.  Right?
>
> MAZAN:  I don't recall that.
>
> DEFENSE COUNSEL:  That might have been?
>
> MAZAN:  If I did, I don't recall it.  I'm pretty sure he -- he just came forward and said it.
>
> DEFENSE COUNSEL:  So, you could have looked at his ID in his wallet and gotten that -- his name Larry from his wallet?
>
> MAZAN:  I'm not sure.  I don't recall.

On redirect examination, Mazan reiterated that defendant "voluntarily" provided his identifying information.

At the conclusion of the hearing, the judge denied the motion, concluding he did not find "any evidence that the obtaining of [defendant's] name was done

A-5530-17T1

in an improper fashion."  In his written decision that followed, the judge elaborated:

> Nothing in the officer's testimony, both on direct and cross, provides any proof to support [defendant]'s contention that his real name was acquired extra-legally from him.  [Defendant] posited that theory in cross[-] examination, but the responses given did not corroborate his theory and no other evidence was proffered to support the notion that the acquisition of his name during this encounter was improper, warranting a suppression.  The statement by [Mazan] that [defendant] offered his real name during the encounter is uncontroverted.

Finding there was no evidence of any impropriety by Mazan, the motion judge concluded the officer had reasonable suspicion to stop defendant, who matched the description of the information provided by the caller, and thereafter ask his name.  Accordingly, the judge found "no basis" to suppress the drugs seized from defendant incident to his arrest.

Our review of a trial court's decision on a suppression motion is circumscribed.  We defer to the court's factual and credibility findings "so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014); State v. Elders, 192 N.J. 224, 243 (2007).  Deference is afforded because the "findings of the trial judge . . . are substantially influenced by his opportunity to hear and see the witnesses and to

have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Reece, 222 N.J. 154, 166 (2015) (alteration in original) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). We disregard a trial court's factual and credibility findings only if clearly mistaken. State v. Hubbard, 222 N.J. 249, 262 (2015). The legal conclusions of the trial court, however, are reviewed de novo. Id. at 263.

An investigatory stop is a well-established exception to a search or seizure conducted without a warrant. State v. Coles, 218 N.J. 322, 342 (2014). When an "anonymous tip is conveyed through a 9-1-1 call and contains sufficient information to trigger public safety concerns and to provide an ability to identify the person, a police officer may undertake an investigatory stop of that individual." Gamble, 218 N.J. at 429.

"[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." State v. Shaw, 213 N.J. 398, 411 (2012) (quoting Florida v. Royer, 460 U.S. 491, 497 (1983)). In determining whether an investigative detention is justified under the reasonable suspicion standard, "a court must consider the 'totality of the circumstances – the whole picture.'" State v. Stovall, 170 N.J. 346, 361 (2002) (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)).

A-5530-17T1

Not surprising, defendant – who was dressed in outerwear similar to that described by the 9-1-1 caller – does not challenge Mazan's initial stop and frisk. Instead, he argues that when the initial pat-down search failed to yield a weapon, "reasonable suspicion had evaporated," thereby unlawfully extending the stop. Defendant contends our Supreme Court's recent decision in State v. Chisum, 236 N.J. 530 (2019), supports his position. We disagree.

In Chisum, officers responded to a noise complaint at a motel room occupied by ten people. Id. at 535. During the suppression hearing, an officer acknowledged the "investigation was complete" when the renter agreed to turn down the noise and the officers decided not to issue a summons. Id. at 537. Nonetheless, police ran a warrant check on all occupants, which revealed an active warrant for one of the defendants. Id. at 538. The defendant was arrested on the warrant and police recovered a handgun incident to his arrest; his co-defendant – who willfully remained in the motel room even though he was record-checked with negative results – was then frisked for weapons and arrested when officers found a handgun. Id. at 538-39.

Reversing our decision that upheld the search, the Court concluded the detention of all occupants, including the defendants, was unconstitutional. Id. at 548. The Court found the officers prolonged the defendants' detention after

A-5530-17T1

the investigation had concluded and, as such, it "was unnecessary and improper because doing so would do nothing to help confirm or undermine the police officers' decision regarding the noise complaint." Id. at 550.

By contrast, Mazan testified he "was still investigating . . . the incident" after his pat-down search of defendant revealed no weapons. As the State effectively argues, "defendant could have discarded or hidden the blade nearby or secreted it on his person in a way that made it undetectable in a pat-down." Notably, Mazan did not find the pill bottle during the pat-down search or search incident to defendant's arrest.

Unlike the finality of the noise complaint in Chisum, the encounter here was fluid: Mazan arrived at the scene; observed defendant fitting the description of the 9-1-1 call and engaging in an ongoing dispute; a search revealed no weapons; but defendant could have been within reach of some sort of blade, the size of which was unknown. Under those circumstances, it was reasonable for Mazan to continue his investigation and ask defendant his name. Indeed, as the motion judge correctly recognized, asking defendant for his "name or identification d[id] not implicate the Fourth Amendment." See State v. J.S.G., 456 N.J. Super. 87, 108 (App. Div. 2018).

Moreover, the Court has long recognized, "law enforcement's need to respond to the fluidity of a street encounter where there is a reasonable suspicion of wrongdoing; accordingly, the duration of the investigative stop may be extended for a reasonable but limited period for investigative purposes" provided the detention is "reasonable both at its inception and throughout its entire execution." Coles, 218 N.J. at 343-44. Given the totality of the circumstances, we perceive no basis to disturb the motion judge's conclusion that the stop was reasonable. The record amply supports the reasonableness of its duration.

Nor do we find any merit in defendant's argument that the motion judge improperly shifted the burden to him to demonstrate his name was legally obtained. Instead, the judge rejected counsel's attempt to discredit Mazan's testimony in that regard, and correctly noted the officer's testimony was unrefuted. Mazan ultimately maintained defendant voluntarily disclosed his name, stating he "d[id]n't recall" the disclosure occurring as counsel suggested. Based on that testimony, the judge found the "[a]bsen[ce of] any evidence of any improprieties by the officer." The judge's decision rested on his unexpressed credibility findings, see Locurto, 157 N.J. at 473, to which we owe our deference, see Gamble, 218 N.J. at 424.

9

To the extent not specifically addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5530-17T1