**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0252-19T1

MIKE ASSAD,

    Plaintiff-Appellant,

v.

ABSECON BOARD OF
EDUCATION, THOMAS GRITES,
CHRISTOPHER COTTRELL,
RAQUEL LAW, MEGAN MARCZYK,
ERIC NEAL, JOHN RYNKIEWICZ,
LINDA WALLACE, DANIEL
DOOLEY, TINA MARCURA,
LINDSAY REED, officially as
members, officers and employees of
the ABSECON BOARD OF
EDUCATION,

    Defendants-Respondents.

_____

Submitted May 11, 2020 – Decided August 21, 2020

Before Judges Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0897-19.

Mike Assad, appellant pro se.

Parker McCay, PA, attorneys for respondents (Brett Elliot John Gorman, of counsel and on the brief; Emily Elizabeth Strawbridge, on the brief).

PER CURIAM

Plaintiff Mike Assad appeals from the Law Division's July 31, 2019 order granting defendant Absecon Board of Education's[1] Rule 4:6-2(e) motion to dismiss plaintiff's complaint alleging defendant failed to maintain or turn over to plaintiff copies of his grammar school records. In dismissing the complaint, the trial court found that all of the documents defendant possessed that it was obligated to maintain had been supplied to plaintiff, and therefore plaintiff could not assert claims under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, or under a common law right of access (CLRA), and that defendant was not in violation of any applicable regulation. On appeal, plaintiff contends that he was entitled to relief because defendant violated his CLRA to the requested documents and that he was entitled to an award of attorneys' fees under OPRA. We affirm as we conclude plaintiff's contentions are without merit, substantially for the reasons expressed by the trial court.

---

[1] Plaintiff's complaint also named members of defendant and its employees. For clarity, we refer to them collectively as "defendant."

The facts derived from the plaintiff's complaint and the motion record are summarized as follows. Plaintiff was enrolled as a student in defendant's school system from 1992 until 2001. On March 4, 2019, plaintiff wrote to defendant asking it to certify details of his academic history to the National Conference of Bar Examiners as part of his request for learning disability accommodations on the Bar Exam's Multistate Professional Responsibility Exam. In a March 13, 2019 response, defendant notified plaintiff that all of his records had been sent to his parochial high school upon his completion of the eighth grade in defendant's district and that no records remained in defendant's possession. Plaintiff then emailed defendant's superintendent of schools on March 21, 2019, asking if he could locate plaintiff's records. The following day, the superintendent responded that the requested documents did not exist and he provided plaintiff with a copy of the district's "Records Retention and Disposition Schedule" (RRDS) detailing how long various records were to be kept and how they could be disposed of following the retention period.

On March 26, 2019, plaintiff requested his records from defendant citing to OPRA and his CLRA. The next day, defendant denied plaintiff's OPRA request stating student records were exempt. However, defendant agreed to provide plaintiff with his records if he executed a release.

Plaintiff sent another request on March 29, 2019, which included a release for disclosure of his student records, but this time asked for "a copy of whatever records the district [did] have concerning [his] enrollment there." Referring to the RRDS, the superintendent responded and advised plaintiff that "we do not keep any student documents for a greater length of time than is required by law." He also directed plaintiff to defendant's attorney should plaintiff have any questions.

On April 1, 2019, defendant's attorney sent plaintiff what the attorney described as a copy of all of plaintiff's student records possessed by defendant. The documents included: (1) a register entry stating name of parents, phone number, years attended, homeroom assignments, and emergency contact; (2) an individual education plan (IEP)[2] dated May 12, 2003; and (3) another IEP dated

---

[2]

> The statutory definition of IEP is a plan written for "students with disabilities developed at a meeting according to N.J.A.C. 6A:14-2.3 that sets forth present levels of performance, measurable annual goals, and short-term objectives or benchmarks, and describes an integrated, sequential program of individually designed instructional activities and related services necessary to achieve the stated goals and objectives."
>
> [Abbott v. Burke, 206 N.J. 332, 431 n.33 (2011) (quoting N.J.A.C. 6A:8-1.3).]

January 12, 2004. According to plaintiff, despite having received the IEPs, the information provided still did not contain all the records plaintiff had been seeking that defendant was obligated by regulation to maintain. Plaintiff contended that the missing documents were his health history, standardized test scores, grades, attendance records, and classes attended. Defendant's attorney assured plaintiff that he would seek confirmation from defendant regarding its possession of the missing documents.

A later search of defendant's computer hard drives by its business administrator did not yield any additional information. Defendant's attorney notified plaintiff that "due to software/computer system updates and compatibility issues, the District's electronic records, including those 'that may be from the years in which [plaintiff was] a student'" were "inaccessible" at that point in time. He assured plaintiff that defendant had "undertaken good-faith efforts" to "access the records" and that he would "continue to provide updates as additional information [became] available."

On April 26, 2019, plaintiff filed his complaint alleging violations of OPRA, CLRA, and education regulations. Defendant filed a motion to dismiss on July 15, 2019, which was supported by a certification from defendant's business administrator confirming that she searched defendant's "online system"

and "old boxes in storage," and provided plaintiff with all of the documents she could find. She then "located hard drives" that defendant used when plaintiff "was a student," and hired a "computer specialist" to review the "antiquated" hard drives, but did not find any "additional documents regarding [plaintiff]." The business administrator certified that "all documents in [defendant's] possession have been provided to [plaintiff] and [she was] not aware of any other documents that may exist."

After considering the parties' oral arguments and placing its decision on the record that day, the trial court granted defendant's motion, and dismissed the complaint with prejudice on July 31, 2019. In its decision, the trial court found plaintiff "concede[d] to receiving the requested information." Applying the standard of review for Rule 4:6-2 motions under Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 772 (1989), to the allegations of the complaint, and noting that there was not a dispute that defendant supplied all documents it had in its possession, the court concluded plaintiff could not state a viable claim under OPRA or the CLRA. As to OPRA, the court found plaintiff's request "was not a valid OPRA request." As to the regulation, defendant supplied the requested information, including those that plaintiff requested about his learning disability. Turning to plaintiff's claim for counsel fees under OPRA, the court

6

concluded there was no basis for an award of fees under that act. This appeal followed.

On appeal, plaintiff argues that he asserted a viable cause of action under a CLRA as the records he requested were subject to that right and defendant's failure to provide him with the missing documents violated the CLRA. Moreover, he contends that we should "decide that OPRA's statutory fulfillment processes apply to [his] CLRA," that defendant violated those processes, and that as a prevailing party he was "entitled to an award of costs" under OPRA. We find no merit to any of these contentions.

We "review[] de novo [a motion judge's] determination of [a] motion to dismiss under Rule 4:6-2(e). [In doing so, we] owe[] no deference to the [motion judge's] legal conclusions." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019) (citation omitted). In our review, we "apply[] the same standard under Rule 4:6-2(e) that governed the motion [judge,]" Wreden v. Township of Lafayette, 436 N.J. Super. 117, 124 (App. Div. 2014), that is, whether the pleadings even "suggest[]" a basis for the requested relief, Printing Mart-Morristown, 116 N.J. at 746 (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). Where a complaint raises statutory and regulatory legal issues, we afford no special deference to the trial

court's interpretation of the law and the legal consequences that flow from established facts. L.R. v. Camden City Pub. Sch. Dist., 452 N.J. Super. 56, 82 (App. Div. 2017), aff'd, 238 N.J. 547 (2019).

As a reviewing court, we assess only the legal sufficiency of the claim. Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005). Consequently, "[a]t this preliminary stage of the litigation [we are] not concerned with the ability of plaintiffs to prove the allegation contained in the complaint." Printing Mart-Morristown, 116 N.J. at 746. Rather, we accept the factual allegations as true, Sickles, 379 N.J. Super. at 106, and "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim." Printing Mart-Morristown, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). "However, we have also cautioned that legal sufficiency requires allegation of all the facts that the cause of action requires." Cornett v. Johnson & Johnson, 414 N.J. Super. 365, 385 (App. Div. 2010), aff'd as modified, 211 N.J. 362 (2012). In the absence of such allegations, the claim must be dismissed. Ibid.

A motion to dismiss for failure to state a claim must be denied if, giving plaintiff the benefit of all his allegations and all favorable inferences, a claim

has been established. R. 4:6-2(e); see also Banco Popular N. Am. v. Gandi, 184 N.J. 161, 165 (2005). "A complaint should be dismissed for failure to state a claim pursuant to Rule 4:6-2(e) only if 'the factual allegations are palpably insufficient to support a claim upon which relief can be granted.'" Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010) (quoting Rieder v. State Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)). "[P]leadings reciting mere conclusions without facts and reliance on subsequent discovery do not justify a lawsuit," and warrant dismissal. Glass v. Suburban Restoration Co., 317 N.J. Super. 574, 582 (App. Div. 1998).

We begin our de novo review by observing that plaintiff does not contend that defendant withheld documents from him to which he was entitled. Rather he maintains that the failure to preserve records violated the CLRA and the controlling regulation. We address each claim.

At the outset, to the extent plaintiff argues OPRA applies to the CLRA, we conclude that, as plaintiff concedes in his reply brief, OPRA is not applicable to student records, or to an analysis of whether his CLRA was violated. OPRA requires that government records be readily accessible to the citizens of the State of New Jersey, subject to certain exceptions. N.J.S.A. 47:1A-1. Pursuant to OPRA, government records are those "that ha[ve] been made, maintained or kept

on file . . . or that have been received in the course of . . . official business" by a designated official. N.J.S.A. 47:1A-1.1. However, confidential school records that are subject to the New Jersey Pupil Rights Act, (NJPRA), N.J.S.A. 18A:36-19, are not subject to disclosure under OPRA. See L.R. v. Camden City Pub. Sch. Dist., 238 N.J. 547, 560 (2019) (Patterson, J., concurring) ("[T]o the extent that the disputed student records in these matters are protected from public disclosure by the NJPRA and its implementing regulations, those records are not subject to disclosure under OPRA.").[3]

Here, there is no dispute that plaintiff sought records that are specifically protected by the NJPRA. Therefore, to the extent plaintiff asserted any claim in his complaint under OPRA, including his claim for counsel fees, the trial court correctly dismissed it with prejudice.[4]

---

[3] Where they are not protected by NJPRA, school districts releasing documents to an authorized person must "adhere to requirements pursuant to N.J.S.A. 47:1A-1 et seq., [OPRA] and 20 U.S.C. § 1232g; 34 CFR Part 99, the Family Educational Rights and Privacy Act (FERPA)." N.J.A.C. 6A:32-7.5(g).

[4] Even if the plaintiff had a viable claim for fees, because he was self-represented an award of counsel fees was not warranted, Segal v. Lynch, 211 N.J. 230, 262-64 (2012), and since defendant supplied plaintiff with all documents it possessed relating to plaintiff, plaintiff was not a catalyst under OPRA such that an award of fees would be appropriate. See Jones v. Hayman, 418 N.J. Super. 291, 305 (App. Div. 2011) ("In order to be awarded counsel fees under the catalyst theory, a plaintiff must demonstrate '(1) a factual causal nexus

Turning to plaintiff's claims for release of documents under a CLRA, we initially observe that such claims exist parallel to and unrestricted by OPRA. See Mason, 196 N.J. at 67. "The [CLRA] to public documents provides that a party shall have access to public documents when the party seeking access has an interest in the documents and the party's interest outweighs the public's interest in preventing disclosure." Commc'ns Workers of Am. v. Rousseau, 417 N.J. Super. 341, 363 (App. Div. 2010) (citing Keddie v. Rutgers, 148 N.J. 36, 50 (1997)). Under the common law, a public record is more broadly defined as

> one required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done, or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office.
>
> [Nero v. Hyland, 76 N.J. 213, 222 (1978) (quoting Josefowicz v. Porter, 32 N.J. Super. 585, 591 (App. Div. 1954)); see also Keddie, 148 N.J. at 49.]

A party seeking access to a public record "must make a greater showing than required under OPRA," Mason, 196 N.J. at 67, and "establish an interest in the subject matter of the material," ibid. (quoting Keddie, 148 N.J. at 50). The

---

between the litigation and the relief ultimately achieved; and (2) that the relief ultimately secured by plaintiff had a basis in law.'" (quoting Mason v. City of Hoboken, 196 N.J. 51, 67 (2008))).

A-0252-19T1

requestor's interest "may be either a wholesome public interest or a legitimate private interest." Drinker Biddle & Reath LLP v. N.J. Dep't of Law & Pub. Safety, 421 N.J. Super. 489, 499 (App. Div. 2011) (quoting Educ. Law Ctr. v. N.J. Dep't of Educ., 198 N.J. 274, 302 (2009)).

The CLRA, however, is not absolute. Keddie, 148 N.J. at 49-50. An individual seeking public records under the common law must meet the following requirements. Id. at 50. First, the records sought "must be common-law public documents." Ibid. Second, "the person seeking access must 'establish an interest in the subject matter of the material.'" Ibid. (quoting S. Jersey Publ'g Co. v. N.J. Expressway Auth., 124 N.J. 478, 487 (1991)). Third, a "citizen's right to access 'must be balanced against the State's interest in preventing disclosure.'" Ibid. (quoting Higg-A-Rella, Inc. v. County of Essex, 141 N.J. 35, 46 (1995)); see also L.R., 238 N.J. at 575 (identifying the nonexclusive considerations in determining whether to release confidential school records to third parties); Drinker Biddle, 421 N.J. Super. at 500 (identifying the considerations in performing a balancing test under a CLRA generally).

Here, there was no need for any balancing test as plaintiff was entitled to his school's records and there was no State interest in nondisclosure asserted in

response to his request. An adult student is entitled to his or her records, N.J.A.C. 6A:32-7.5(e)(1), and defendant immediately recognized plaintiff's entitlement to the documents and provided plaintiff with a release to sign for the purpose of turning over all of the documents it had on file. The issue here is not whether defendant was entitled to his records, but whether defendant violated plaintiff's CLRA by failing to maintain copies of documents it was obligated to keep on file.

The NJPRA requires that school boards

> maint[ain] and ret[ain] . . . pupil records and for the security thereof and access thereto, to provide general protection for the right of the pupil to be supplied with necessary information about herself or himself, the right of the parent or guardian and the adult pupil to be supplied with full information about the pupil, except as may be inconsistent with reasonable protection of the persons involved, the right of both pupil and parent or guardian to reasonable privacy as against other persons and the opportunity for the public schools to have the data necessary to provide a thorough and efficient educational system for all pupils.
>
> [State v. J.S.G., 456 N.J. Super. 87, 102 (App. Div. 2018) (quoting N.J.S.A. 18A:36-19).]

"N.J.A.C. 6A:32-7.1(b), requires school districts to 'compile and maintain student records . . . .'" Ibid. (quoting N.J.A.C. 6A:32-7.1(b)).

"Student record" is defined as:

[I]nformation related to an individual student gathered within or outside the school district and maintained within the school district, regardless of the physical form in which it is maintained. Essential in this definition is the idea that any information that is maintained for the purpose of second-party review is considered a student record. Therefore, information recorded by certified school personnel solely as a memory aid and not for the use of a second party is excluded from this definition.

[N.J.A.C. 6A:32-2.1.]

"Mandated student records" that school districts must maintain include

1. The student's name, address, telephone number, date of birth, name of parent(s), gender, standardized assessment results, grades, attendance, classes attended, grade level completed, year completed, and years of attendance;

2. Record of daily attendance;

3. Descriptions of student progress according to the student evaluation system used in the school district;

4. History and status of physical health compiled in accordance with State regulations, including results of any physical examinations given by qualified school district employees and immunizations;

5. Records pursuant to rules and regulations regarding the education of students with disabilities; and

6. All other records required by N.J.A.C. 6A.

14

[N.J.A.C. 6A:32-7.3.]

The last public school district that a student attended is responsible for "keep[ing] for 100 years a mandated record of a student's name, date of birth, name of parents, gender, health history and immunization, standardized assessment results, grades, attendance, classes attended, grade level completed, year completed, and years of attendance."  N.J.A.C. 6A:32-7.8(e).

There is no dispute here that defendant did not maintain all of plaintiff's "mandated student records."  The gravamen of plaintiff's claim is not that defendant did not give him access to all of the records defendant had on file, but that defendant did not have in its possession the documents which it was obligated to keep on file and turn over to him upon request.  That failure, however, does not give rise to a cause of action.  "The NJPRA and its governing regulations merely provide administrative remedies for a violation and do not provide for a private right of action . . . ."  J.S.G., 456 N.J. Super. at 105 (citing L.S. v. Mount Olive Bd. of Educ., 765 F. Supp. 2d 648, 664 (D.N.J. 2011) (holding that FERPA and the NJPRA do not provide a private right of action)).

We conclude, therefore, as did the trial court, that plaintiff was not denied access where "the undisputed evidence [demonstrated there] was full disclosure of all . . . documents in [defendant's] possession[, and] to the extent [plaintiff's]

15

request was for records that either did not exist or were not in [defendant's] possession, there was, of necessity, no denial of access at all." Bent v. Township of Stafford, 381 N.J. Super. 30, 38 (App. Div. 2005) (footnote omitted).

To the extent we have not specifically addressed any of plaintiff's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0252-19T1